# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| HERSCHEL COLLINS, ET AL., : | |
| : | |
| Plaintiffs, : | |
| : | No. 3:04CV1905 (MRK) |
| v. : | |
| : | |
| EXPERIAN CREDIT REPORTING : | |
| SERVICE, ET AL., : | |
| : | |
| Defendants. : | |

## MEMORANDUM OF DECISION

The claims of these three Plaintiffs – Mr. Collins, Ms. Jessup, and Mr. Wooten – all concern alleged inaccuracies in credit reports that were compiled and distributed by Defendants Experian Information Solutions, Inc. ("Experian"), Trans Union LLC ("Trans Union"), and Equifax Information Services LLC ("Equifax"),[1] the three largest credit reporting agencies in the country. Mr. Collins and Ms. Jessup allege that they were victims of identity theft. They maintain that although they notified Defendants of this fact, Defendants nevertheless failed to place the requisite fraud alerts on their files and failed to block the provision to third parties of information in their credit reports that is alleged to have been the result of the identity thefts. Because of these alleged failures on Defendants' part, Mr. Collins claims that he was denied a mortgage, and Ms. Jessup claims that she lost her house in a foreclosure on a second mortgage of which she was unaware. For his part, Mr. Wooten asserts that as a result of inadequate procedures for ensuring the accuracy of

---

[1] Although Plaintiffs misidentified Defendants in their pleadings as "Experian Credit Reporting Service," "Trans Union Credit Reporting Service, and "Equifax Credit Reporting Service," respectively, Defendants clearly have not been hindered in their defense by this error, and the Court will consider Plaintiffs' claims on the merits.

information in consumers' credit reports, Defendants reported incorrectly that he had defaulted on a student loan and that his car had been repossessed, making it difficult for him to qualify for credit.

Experian, Trans Union and Equifax have now moved for summary judgment [doc. ## 143, 144, 145]. Having considered the parties' submissions,[2] the Court hereby GRANTS Defendants' motions.

I.

The procedural history of this case is intricate and lengthy. However, the Court believes that a brief description of the progress of this litigation is appropriate in order to frame the issues currently before the Court and to place the Court's decision in the proper perspective. Plaintiffs, acting *pro se*,[3] filed their original Complaint [doc. # 1] on November 12, 2004. In that Complaint, they purported to represent a class of consumers whose credit reports had been altered intentionally by Defendants in order to "blackball and extort." *Id.* at 4. Although Plaintiffs made reference to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, they failed to indicate any specific instances of conduct that would constitute a violation of that statute or to identify which Defendant had allegedly committed which act. In light of these deficiencies, Defendants filed a Consolidated Motion to Dismiss, and, in the Alternative, for a More Definite Statement [doc. # 9] on December

---

[2] Plaintiffs failed to provide a response to Defendants' Motions for Summary Judgment, including the Statement of Material Facts required by Local Rule 56(a)2. As a result, the Court has looked to Plaintiffs' responses to Defendants' interrogatories and requests for admission, their depositions, their prior filings, and the Court's previous interpretations of their claims. The Court has also checked the sources cited in Defendants' Local Rule 56(a)1 statement to ensure that the there is record support for Defendants' statement of facts that are not in dispute. Accordingly, the Court has reached its conclusions without deeming Plaintiffs to have admitted Defendants' Statements of Material Fact, as the Court might have done under Local Rule 56(a)1.

[3] At times over the course of this lawsuit, Plaintiffs have retained an attorney, but they are currently proceeding *pro se*. *See* Notice to the Court [doc. # 162].

3, 2004. In its Ruling and Order of December 22, 2004 [doc. # 17], the Court agreed with Defendants that Plaintiffs could not serve as class representatives so long as they proceeded *pro se*, but rather than dismiss the Complaint, the Court interpreted the lawsuit as one brought in Plaintiffs' individual capacities. *Id.* at 2. The Court also directed Plaintiffs to provide a clearer and more detailed account of their claims against each Defendant. *Id.* at 3.

In response to the Court's directive, Plaintiffs filed an Amended Complaint [doc. # 28] on February 25, 2005. Over the course of the next several months, Ms. Jessup also filed an Immediate Emergency Motion for a Court Order to Vacate Court Order of Connecticut Superior Court for Lack of Jurisdiction [doc. # 23], requesting that the Court overturn a Connecticut Superior Court judgment permitting State marshals to take possession of Ms. Jessup's property as part of the foreclosure process, and a Motion for Leave to Expand My Complaint [doc. # 34], seeking to include participants from the foreclosure action in the current action. Eventually, Ms. Jessup filed a *lis pendens* on the land record of her former property, requiring the intervention of the current owner, Mr. Robert Hannafin, in this suit to resolve the issue. *See* Motion to Intervene [doc. # 41]; Motion for Discharge of Lis Pendens [doc. # 43]; Ruling & Order [doc. # 51] (granting motion to intervene and discharging *lis pendens*). Mr. Collins filed a Motion for a Preliminary Injunction and a Temporary Restraining Order [doc. # 35] as well, claiming that Defendants were retaliating against him by altering his credit report.

The Court addressed the Defendants' renewed Motions to Dismiss [docs. ## 31, 32], Ms. Jessup's Motion for Leave to Expand My Complaint [doc. # 34], and Mr. Collins' Motion for Preliminary Injunction [doc. # 35] in its Ruling and Order of August 24, 2005 [doc. # 45]. The Court denied Plaintiffs' motions, but also denied the motions to dismiss, with the exception of the portion

of Experian's Motion to Dismiss that was addressed to those claims Mr. Collins had already brought against Experian in a prior lawsuit. Ruling & Order [doc. # 45], at 5-6. Further, the Court clarified Plaintiffs' claims, in particular by identifying the statutory sections at issue. *Id.* at 4-5, 8, 10. Defendants have adopted the Court's interpretation of Plaintiffs' claims for purposes of their motions for summary judgment.

As the parties entered discovery, difficulties arose as a result of Plaintiffs' failure to comply with Defendants' discovery requests. Defendants filed several motions seeking to compel Plaintiffs' cooperation. *See, e.g.*, Equifax's Motions to Compel [docs. ## 56-57]; Trans Union's Motions to Compel Discovery Responses [docs. ## 60-62]; Experian's Motions to Compel, and, in the Alternative, for an Order to Show Cause [docs. ## 64-65]. The Court was eventually forced to issue Orders to Show Cause on October 27 [doc. # 59], November 21 [doc. # 63], and November 22, 2005 [doc. # 66], requiring Plaintiffs to explain why their case should not be dismissed for failure to comply with Defendants' discovery requests. Plaintiffs' response was to assert that they had in fact complied, and to "demand this court get on schedule and apply the law equally to the 14th Amendment." Response to Order to Show Cause [doc. # 69], at 1-2. Defendants disagreed with Plaintiffs' assessment, however, and filed a third round of motions to dismiss based upon the failure to provide discovery. *See* docs. ## 67 (Equifax); 70, 72 (Experian); 77-79 (Trans Union). The Court granted the motions to compel in its Order of February 6, 2006 [doc. # 76], but denied Defendants' motions to dismiss without prejudice, instead ordering Plaintiffs to respond to Defendants' discovery requests by March 31, 2006. *See* Order [doc. # 83]. A *further* round of motions to dismiss premised on Plaintiffs' failure to comply with Defendants' discovery requests followed. *See* docs. ## 89-90 (Experian); 91 (Equifax); 92-94 (Trans Union). The Court ultimately resolved the issue in its Ruling

4

and Order of June 5, 2006 [doc. # 99], in which the Court determined that a "sanction short of dismissal" was appropriate. *Id.* at 4. Accordingly, the Court prohibited Plaintiffs from introducing evidence regarding interrogatories or requests for production with which they had failed to comply, and Plaintiffs were deemed to have admitted the matters "fairly encompassed" by requests for admission that were "inadequately denied or not answered at all." *Id.*[4] The Court also raised the possibility that Plaintiffs might be liable for the costs of any depositions that became necessary as a result of their incomplete production to date. *Id.*

In a manner similar to that of Ms. Jessup, Mr. Collins then sought to resolve distinct credit-related matters in the instant suit. Mr. Collins purchased a Ford Explorer from Hoffman Ford in East Hartford on January 1, 2005. Sovereign Bank appears to have financed the transaction, and Mr. Collins blamed Sovereign Bank for alleged discrepancies between the price he should have paid and what he was actually charged. *See* Motion for Contempt of Court on a Subpoena Served on Sovereign Bank Failed to Respond to [sic] [doc. # 112]; Motion for 14th Amendment Violation & Sanctions [doc. # 117]. There was also a suggestion in Mr. Collins' Motion for Contempt that Sovereign Bank might have had something to do with the alleged theft of his car after he began complaining to the bank. *See* Motion for Contempt [doc. # 112]. As a result, Sovereign Bank was required to respond to an Order to Show Cause [doc. # 115] regarding its failure to comply with Mr. Collins' subpoena. The Court denied Sovereign Bank's request for a restraining order against Mr. Collins, but found that his subpoena had been improper for two reasons: first, he had structured the subpoena not as a request for documents or a deposition, as permitted by *Federal Rule of Civil*

---

[4] Although the Court considers this sanction warranted by Plaintiffs' lack of cooperation in discovery, the Court reached its decision today based on the entire record, including Plaintiffs' discovery responses and deposition testimony.

*Procedure* 45, but rather as a list of interrogatories; and second, Sovereign Bank was neither a party to the case nor were the events in question related to the underlying suit against Defendants. Ruling & Order [doc. # 120].[5]

Thus, it is in light of this extended procedural history that the Court now turns to its disposition of the motions currently pending.

## II.

The summary judgment standard is a familiar one. Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica College of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (internal quotation marks omitted). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (alteration in the original)).

The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986), and the Court must resolve all ambiguities and draw all inferences in favor of the plaintiff, *see Anderson*, 477 U.S. at 255. If

---

[5] During the course of these proceedings, the Court also referred the parties to Magistrate Judge Garfinkel for the purpose of court-supervised settlement talks, but the parties were unable to reach an agreement. *See* doc. # 138.

the moving party carries its burden, the party opposing summary judgment "may not rest upon . . . mere allegations or denials . . . ." Fed. R. Civ. P. 56(e). Rather, the opposing party must "set forth specific facts showing that there is a genuine issue for trial." *Id.* In short, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

Where one party is proceeding *pro se*, the Court reads the *pro se* party's papers liberally and interprets them to raise the strongest arguments suggested in those papers. *See Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007). Despite this liberal interpretation, however, a "bald assertion, completely unsupported by evidence," cannot overcome a properly supported motion for summary judgment. *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

## III.

The Court will begin with Mr. Collins and Ms. Jessup, each of whom make claims under 15 U.S.C. §§ 1681c-1 and -2, two sections of the FCRA. *See* Ruling & Order [doc. # 45] (construing Plaintiffs' claims). Under § 1681c-1, a credit reporting agency is required to put a "fraud alert" on the file of any consumer who asserts in good faith that she has been, or is about to become, the victim of identity theft. This fraud alert requests creditors to take additional steps to verify the applicant's identity before modifying any credit accounts or opening new credit accounts in the applicant's name. *See* 15 U.S.C. § 1681c-1(h). A victim of identity theft is also entitled to receive a free credit report under § 1681c-1. Under § 1681c-2, a credit reporting agency must, after receiving certain verifying information, "block the reporting of information in the file of a consumer

7

that the consumer identifies as information that resulted from an alleged identity theft." 15 U.S.C. § 1681c-2(a).

These two provisions became operative on December 1, 2004,[6] after Plaintiffs had filed their original Complaint [doc. # 1] on November 12, 2004. Thus, a threshold question arises as to whether these sections apply to conduct that occurred before their enactment. As the Supreme Court noted in *Landgraf v. USI Film Products*, 511 U.S. 244, 265 (1994) (internal quotation marks omitted), "the principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal." Given the potential unfairness of imposing new duties on actors for their past conduct, the Supreme Court has indicated that the "clear intent" of Congress is usually required before a lower court will interpret a statute as having retrospective effect. *Id.* at 272-73; *see also Fernandez-Vargas v. Gonzales*, 126 S. Ct. 2422, 2428 (2006) ("Accordingly, it has become a rule of general application that a statute shall not be given retroactive effect unless such construction is required by explicit language or by necessary implication.") (internal quotation marks omitted); *Enterprise Mortgage Acceptance Co. v. Zar*, 391 F.3d 401, 405-06 (2d Cir. 2004) ("[T]hose cases where the Court has found truly 'retroactive' effect adequately authorized by statute have involved statutory language that was so clear it could sustain only one interpretation.") (internal quotation marks and alteration omitted). Given that the statutory language invoked by Plaintiffs makes no mention of retroactive effect and Plaintiffs have failed to

---

[6] See the Effective and Applicability Provisions Note to 15 U.S.C. § 1681, which made these and other additions to the FCRA effective as established in regulations by the Board of Governors of the Federal Reserve System and the Federal Trade Commission and no later than 10 months after the date of issuance of those regulations; and 16 C.F.R. § 602.1(c)(3)(I) and 12 C.F.R. § 222.1(c)(3)(i), which provided an effective date of December 1, 2004.

put forward any compelling reason to interpret these provisions as having such an effect, the Court holds that §§ 1681c-1 and -2(a) apply only to conduct occurring on or after December 1, 2004.

This determination still leaves open the possibility that Plaintiffs may state a claim on the basis of Defendants' conduct after December 1, 2004 and before February 25, 2005, when they filed their Amended Complaint [doc. # 28]. However, there is no evidence to suggest that either Mr. Collins or Ms. Jessup ever contacted any of the Defendants to communicate to them their concerns about identity theft, much less contacted them within the relevant period. Section 1681c-1 requires credit reporting agencies to place a fraud alert on a file "*[u]pon the direct request* of a consumer . . . who *asserts in good faith* a suspicion that the consumer has been or is about to become a victim of fraud or related crime, including identity theft." 15 U.S.C. § 1681c-1(a)(1) (emphasis added). In order to trigger the blocking obligation under § 1681c-2, the consumer must also provide the credit reporting agency with proof of his identity and a copy of an identity theft report, among other things. *See* 15 U.S.C. § 1681c-2(a). Thus, under either section, Mr. Collins and Ms. Jessup were required to bring their alleged identity theft to Defendants' attention before they could be expected under the statute to place an alert or a block on their files. However, none of the Defendants has any record of any such communications by either of these Plaintiffs. *See* Declaration of Eileen Little, Trans Union's Mem. in Supp. [doc. # 143-2], Ex. A, ¶¶ 6-7; Hughes Affidavit, Experian's Mem. in Supp. [doc. # 145-1], ¶¶ 3-4; Fluellen Declaration, Equifax's Mem. in Supp. [doc. # 144-1], Ex. 4, ¶¶ 31, 34. Nor have Plaintiffs submitted any evidence that they asked for an alert or block on their credit files.

Plaintiffs' own testimony in their depositions is not to the contrary. For example, Mr. Collins claimed that he had sent several letters to Trans Union, but that the last one was in "October or

9

November of '04 probably," before the identity theft provisions of the FCRA had gone into effect. Collins Deposition, Trans Union's Mem. in Support [doc. # 143-2], Ex. B at 16-18. The timeline was similar for his contacts with Equifax. *See* Collins Deposition, Equifax's Mem. in Support [doc. # 144-1], Ex. 1 at 107 ("Last time I sent something out to your office was October and November of '04 . . . .").[7] Ms. Jessup claimed in her deposition to have called one of the three Defendants shortly after discovering the second mortgage on her house in 2002, but was unable to remember which of the three she had called, and in any event, the phone call was in 2002. *See* Jessup Deposition, Equifax's Mem. in Support [doc. # 144-1], Ex. 2 at 16-17 ("Q. So you contacted them by telephone? A. Yes. Q. And this is still in 2002; is that right? A. Yes. Q. Okay. And you never heard back from any of them? A. No. Q. Did you contact all three or just one? Do you remember? A. I thought it was just one, because I never – I paid my bills, so I thought it was just one. Q. Do you know which one it is that you contacted? A. No, I don't. Q. Is that the only contact you've ever had with any of the credit reporting agencies? A. Yes."). Tellingly, neither Mr. Collins nor Ms. Jessup has provided documentary evidence to support even these limited contacts with Defendants.

Further, Ms. Jessup's only claim is that a fraudulent second mortgage and other, personal lines of credit were taken out in her name without her permission. *See* Am. Compl. [doc. # 28] at 3 (claiming that as a result of Defendants' refusal to comply with the FCRA, "my property has been taken" and "I have been told I have credit cards in my name, the bill does not come to my address, I ask where the cards and bill going, no response from defendants"). In her deposition, however, Ms. Jessup admitted that she learned about this allegedly fraudulent mortgage and other credit lines in

---

[7] It appears that Defendant Experian did not depose Mr. Collins, perhaps because Mr. Collins' claims against Experian had been dismissed on the basis of *res judicata*, as noted above. *See* Ruling & Order [doc. # 45], at 5-6.

the summer of 2002, *see* Jessup Deposition at 11, Experian's Memorandum in Support [doc. # 145-1], Ex. 7; *see also* Experian's First Requests for Admission, *id.*, Ex. 1, Request No. 2, which would not only put her well in advance of the December 1, 2004 effective date of the provisions she invokes, but also well beyond the FCRA's two-year statute of limitations, *see* 15 U.S.C. § 1681p(1), even assuming retroactive effect.[8]

Mr. Collins' only clear allegation of wrongdoing by Defendants that resulted in harm was the denial of a mortgage request he made to Sovereign Bank in 2006, supposedly as a result of inaccurate information in his credit report.[9] Although this date would fall after the effective date of the statutory provisions he invokes, Trans Union attached to its Memorandum in Support [doc. # 143], a letter to Mr. Collins from Sovereign Bank which states that title problems with the property to be mortgaged were the reason Sovereign Bank denied his request. *Id.*, Ex. C. Mr. Collins has provided no evidence to suggest that Sovereign Bank's stated reason was pretextual or that actions by any of the Defendants were in fact the cause of Sovereign Bank's denial of Mr. Collins' request**.**

Thus, given that these Plaintiffs have not shown that the applicable statutory provisions were in effect at the time they contacted Defendants regarding the alleged identity thefts, that the provisions were intended to be retroactive, or even that they fulfilled their responsibilities under the

---

[8] The Court also notes that in Ms. Jessup's credit report, it is her failure to pay her original 1997 mortgage, rather than any later, fraudulent mortgage, that resulted in the foreclosure on her home in 2004. *See* Experian's Mem. in Support [doc. # 145-1], Ex. 3, at 5.

[9] Trans Union also states that Mr. Collins claims he suffered medical injury as a result of Defendants' FCRA violations, but he has provided no evidence of these injuries. *See* Trans Union's 56(a)1 Statement [doc. # 143-3], ¶ 10. Similarly, although Ms. Jessup stated that she was "in and out [of doctor's care] all the time since the nightmare came upon [her]," she has provided no documents to support that claim. *See* Experian's First Set of Interrogatories, Mem. in Support [doc. # 145-1], Ex. 5, Interrogatory No. 21.

statute, the Court GRANTS Defendants' Motions for Summary Judgment [docs. ## 143-45] as to the claims of Mr. Collins and Ms. Jessup.

**IV.**

Mr. Wooten bases his claim on another section of the FCRA, 15 U.S.C. § 1681e(b), which states, "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." As mentioned earlier, Mr. Wooten claims that erroneous entries in his credit report, indicating a defaulted student loan and a repossessed car, prevented him from obtaining credit. Those entries were allegedly incorrect because he never applied for a student loan and his car was recalled, not repossessed. *See* Am. Compl. [doc. # 28], at 3-4.

Courts generally agree that in order to succeed on a claim under § 1681e(b), a plaintiff must show that:

> (1) the consumer reporting agency was negligent in that it failed to follow reasonable procedures to assure the accuracy of its credit report; (2) the consumer reporting agency reported inaccurate information about the plaintiff; (3) the plaintiff was injured; and (4) the consumer reporting agency's negligence proximately caused the plaintiff's injury.

*Whelan v. Trans Union Credit Reporting Agency*, 862 F. Supp. 824, 829 (E.D.N.Y. 1994) (citing *Houston v. TRW Info. Servs., Inc.*, 1989 WL 59850 (S.D.N.Y. May 2, 1989), *aff'd*, 896 F.2d 543 (2d Cir. 1990)). Further, "the threshold question is whether the challenged credit information is accurate; if the information is accurate, no further inquiry into the reasonableness of the consumer reporting agency's procedures is necessary." *Id.* Every circuit to consider the question has agreed that this threshold showing is fundamental to the success of a claim under § 1681e(b). *See, e.g.*, *Philbin v. Trans Union Corp.*, 101 F.3d 957, 963 (3d Cir. 1996); *Dalton v. Capital Associated Indus., Inc.*, 257

F.3d 409, 415 (4th Cir. 2001); *Spence v. TRW, Inc.*, 92 F.3d 380, 382 (6th Cir. 1996); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994); *Guimond v. Trans Union Credit Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995); *Cassara v. DAC Servs., Inc.*, 276 F.3d 1210, 1217 (10th Cir. 2002); *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991); *Koropoulos v. Credit Bureau, Inc.*, 734 F.2d 37, 39 (D.C. 1984). Finally, even if the information is shown to be inaccurate, a plaintiff must still present some evidence that the credit reporting agency failed to follow reasonable procedures in preparing the report in question. *Whelan*, 862 F. Supp. at 829.

Of the three Plaintiffs, Mr. Wooten most clearly and specifically presented his claims. In his responses to Trans Union's First Set of Interrogatories, for example, Mr. Wooten stated that he had sought and been denied credit by credit card companies, cell phone vendors, a car dealer, and a jewelry store. Interrogatories Nos. 7, 8, Trans Union's Mem. in Support [doc. # 143-2], Ex. G. Mr. Wooten provided further details in his responses to Equifax's First Set of Interrogatories, giving the date of his denial of credit by Cingular and the specific companies from whom he had sought credit. *See* Interrogatories Nos. 4, 12, Equifax's Mem. in Support [doc. # 144-1], Ex. 3.[10] Mr. Wooten even provided examples of allegedly incorrect account and reference numbers for the Connecticut student loan he claims was improperly placed in his report. *Id.*, Interrogatory No. 10.

Despite the relative wealth of detail in his discovery responses, Mr. Wooten nonetheless has failed to satisfy the requirements of § 1681e(b). For one, he has not provided any documentary evidence to support his claim that there was inaccurate information in his credit report. In fact, the

---

[10] Mr. Wooten also makes reference to physical and emotional damages in his responses to Equifax's interrogatories, claiming that the denial of a cell phone "damaged [his] pride and con[f]idence" and that he was "being stressed out [h]igh blood pressure restless [n]ight," *id.*, Interrogatories Nos. 5, 6, but as with Mr. Collins and Ms. Jessup, Mr. Wooten failed to provide any documentary evidence of this alleged harm.

Court's independent examination of Mr. Wooten's credit report, dated August 8, 2006 and provided by Experian, shows no repossession of any automobile. The only student loan referred to in the credit report was a loan that was opened in February 2005, well after the original Complaint in this action had been filed, and the credit report lists the loan's status as "Open/Never Late." Experian's Mem. in Support [doc. # 145-1], Ex. 8, at 3.[11]

Furthermore, Mr. Wooten has failed to provide any documentary evidence to support his claim that the allegedly inaccurate credit report was the proximate cause of any harm he suffered, even assuming that he was in fact denied credit. *See, e.g.*, *Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 474-75 (2d Cir. 1995) (affirming finding of lack of causation where plaintiff presented no evidence that a credit report containing incorrect information had been provided to a third party); *Caltabiano v. BSB Bank & Trust Co.*, 387 F. Supp. 2d 135, 142 (E.D.N.Y. 2005) ("To demonstrate an actual injury, a plaintiff generally cannot stand on his subjective testimony alone, but must set forth 'other evidence that such an injury occurred.'") (quoting *Patrolmen's Benevolent Ass'n of New York v. City of New York*, 310 F.2d 43, 55 (2d Cir. 2002)). Thus, Mr. Wooten has failed to demonstrate that the information in his credit reports was actually inaccurate or that such inaccurate information was the proximate cause of any harm to himself. As a result, his claim under § 1681e(b) necessarily fails.

## VI.

It is apparent that Plaintiffs sincerely believe that they have been mistreated by Defendants. However, having given Plaintiffs ample opportunity to develop their case, discover admissible

---

[11] Mr. Wooten has provided no other copies of his credit report against which to compare that provided by Experian.

evidence, and present that evidence to the Court, Plaintiffs have come up short. There are no genuine issues of material fact in dispute, and Defendants are entitled to judgment as a matter of law on the claims asserted against them. Defendants' Motions for Summary Judgment [docs. ## 143-45] are GRANTED.  **The Clerk is directed to enter judgment and close this file.**

IT IS SO ORDERED.


/s/      Mark R. Kravitz      
United States District Judge

**Dated at New Haven, Connecticut: July 6, 2007.**